McVey *v.* Ely.

JOSEPH McVEY *v.* ANNANIAS ELY *et al.*

1. CHANCERY PLEADING AND PRACTICE. *Answer.* An averment in an answer, that the note sued on had been changed so as to make it bear interest from date, by some one, without defendant's knowledge or consent, after he had signed it, is a sufficient averment of an *alteration.*

2. BILLS AND NOTES. *Alteration.* A change of a note in a material respect, after its delivery, in the presence of the payee and by his assent, but in the absence of part of the makers, and without their knowledge or assent, is, as to them, a fraudulent *alteration,* although the other maker was present and representedthat he had authority from all the makers to make the change.

FROM CLAIBORNE.

Appeal from the Chancery Court at Tazewell. H. C. SMITH, Ch.

J. C. HODGES for complainant.

THEO. ROGAN for defendant.

McFARLAND, J., delivered the opinion of the court.

Complainant, the creditor of Annanias Ely, seeks to set aside certain conveyances of his land as fraudulent. The indebtedness consists of two judgments and four notes. No defense was made as to the judgments, but relief as to the notes was resisted upon the ground that they had been altered after their execution. The chancellor decreed in favor of the complainant, except as to the notes, and, as to these,

was of opinion that the defendant was discharged. The complainant alone has appealed, and so the only question is in regard to the correctness of the decree as to the notes. It is first insisted that the chancellor erred in permitting the defendant to amend his answer, setting up the fact of alteration. The bill was filed the 11th of September, 1875. The notes were described by date and amounts, all drawn payable at a future day, but the bill does not charge whether they bore interest from date or not, nor were the notes or copies exhibited or filed as evidence. The defendant's answer, under oath, was waived, and he filed a formal answer admitting that he became the surety of Elias Ely upon similar notes. On the 9th of October, 1877, the defendant presented his affidavit, and the chancellor permitted him to file an amended answer, setting up the defense of alteration. No bill of exceptions was taken to the action of the court upon this question, but the affidavit is in the record, and it appears, from the decree, that it was read as evidence on the trial. It is argued that the alteration was known to the defendant when his original answer was filed, and the affidavit is susceptible of that construction, but it appears that the complainant sued at law upon the four notes, and the defendant pleaded *non est factum,* and expected to make the defense in these cases, but shortly before the application to file the amended answer the complainant dismissed his suits at law, and in this mode was about to avoid the defense. From the records of these cases it appears that the suits

were brought after these bills were filed, although the defendant's affidavit seems to imply differently, and from this the inference was drawn the defendant knew of the alteration when the original answer was filed, but upon the whole record it does not appear that he was so informed. We think the chancellor properly allowed the amendment upon the facts of this case. It does not appear that the defendant had knowledge of the alteration when his original answer was filed. While the action or actions at law were pending, to which he plead *non est factum*, it was supposed that the defense could then be made. After the dismissal of these suits, to refuse the amendment would be to deprive the defendant of defense altogether. It is objected that the answer does not raise the question, that is to say, it does not charge an *alteration* of the notes in a legal sense. It says, in substance, that the notes had been changed or altered so as to make them bear interest from date *by some one*, without his authority or assent, after he had signed them. The argument is that *alteration*, in the legal sense, means a fraudulent charge in the note by the payee, or by his direction, and as the answer does not aver by whom the change was made, it does not aver an alteration, but only a *spoliation*. The answer, however, does aver an *alteration*, and the word has a legal signification. The defendant did not profess to know by whom the change had been made. The question could be made by a simple averment equivalent to a denial that the notes was his act and deed. The facts are these: The complainant had

McVey *v.* Ely. ·

sold to Elias Ely a threshing machine, .for which he was to execute four notes, two payable to complainant at one and two years, *with interest from date,* with the defendant, Annanias Ely and Robert Greer as sureties, and two similar notes were to be executed, payable to T. C. McVey, who owned half the machine. Notes were made in accordance with the contract, except that they did not bear interest from date. They were by Elias Ely, the principal, handed to the complainant, and, as it seems, left for a time in his possession, the other obligors not being present. The complainant, however, testifies that he refused to accept the notes or deliver the machine, because the notes did not bear interest from date; that Elias Ely then or soon after represented that he had authority from defendant Annanias Ely and Robert Greer to change the notes so as to make them bear interest from date, and, by his direction, T. C. McVey interlined · in several notes the words "interest from date" in the presence of the complainant. It is not insisted that the defendant or Greer were present, or in fact authorized the change. Elias Ely in fact denies that *he* authorized it, but to this point the weight of proof is otherwise. For the complainant it is conceded that the defendant is not bound by the notes as altered, but it is insisted that he is bound by them as he originally executed them, that is, without interest before maturity. That as the complainant acted in good faith under the honest belief that Elias Ely had authority to make the interlineation, that his participation in the act was not fraudulent, and therefore

the interlineation did not amount to an *alteration* but only to a *spoliation* of the note.

The case is identical in principle with the case of *Crockett* v. *Thomason,* 5 Sneed, 342, unless the fact that Elias Ely professed to have authority from his co-obligor to make the change in the note alters the principal. In that case, as in this, the principal in the note carried it, with his own and his surety's name signed to it, to one Norden, who was acting as agent of the payee, when Norden told him he must alter the date of payment to make it comply with the contract under which it had been agreed to accept the note, and the alteration was accordingly made by the principal. He did not, however, profess to have authority from his co obligor to make the change. This court held that the change in the date under these facts constituted an *alteration,* and discharged the surety from all liability. The question is whether the fact that Elias Ely professed to have authority to make the change in the present case takes it out of the principle of the above case.

Mr. Greenleaf thus defines an *alteration:* "The term *alteration* is at this day usually applied to the act of the party entitled under the deed or instrument, and imports some fraud *or improper design* on his part to change its effect. Vol. 1, sec. 566. But as we have seen from the case of *Crockett* v. *Thomason,* an interlineation made by the principal in the note in the presence of the payee, is to the surety the same as if made by the payee. The question is whether the change was *fraudulent* in a *legal sense,* or with an

improper design to change the legal effect of the notes. The complainant's testimony, to the effect that Elias Ely professed to have authority to make the change, acquits him of any corruption, and shows that he acted under a mistake of fact. Still the fact remains that the change was made with *a design to change the legal effect of the notes*, and this in the absence of the sureties on the note, and without their assent in fact and the notes thus altered were accepted. The principal in the notes, Elias Ely, was undoubtedly bound by the alteration, and the notes in this form were valid as to him. The notes in their original form were never accepted by the complainant, and consequently the defendant never became bound upon them. The complainant only accepted them as altered, and as altered the defendant did not execute them. If the notes had been accepted in their original form, then we are of opinion that the unauthorized change, with intent to change the legal effect, was in law a fraudulent alteration, no matter how innocent of intentional wrong the complainant may have been.

Decree affirmed with costs.